J-S12014-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| REYNA GABRIEL GARCIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUAN CASTRO PEREZ | : | No. 3038 EDA 2025 |
| | : | |

Appeal from the Order Entered November 3, 2025
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  2025-00684

BEFORE:   McLAUGHLIN, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 2, 2026**

Reyna Gabriel Garcia ("Mother") appeals from the order awarding her sole legal and primary physical custody of her minor child ("Child") but denying her request to make judicial determinations that would allow Child to apply for Special Immigrant Juvenile ("SIJ") status before federal immigration authorities. After careful review, we vacate in part and remand.

Child was born in Guatemala in 2009 and resided there until August 2024, when he moved to Delaware County to live with Mother. Mother filed a complaint in custody less than six months later, in January 2025, when Child was 15 years old. The complaint alleged that Juan Castro Perez ("Putative Father") is Child's biological father and that Putative Father lives in Guatemala, has never been married to Mother, has never had contact with Child, and has

_____

[*] Retired Senior Judge assigned to the Superior Court.

never paid child support for Child. Mother also asked the court to make judicial determinations that would allow Child to seek SIJ status pursuant to 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11. Mother requested that the court find Putative Father abandoned, abused, or neglected Child and that reunification with Father in Guatemala is not in Child's best interests. In addition, Mother filed a petition for special relief, requesting the court hold an evidentiary hearing specifically on the SIJ issues.

The court issued an order denying Mother's petition for special relief. It also issued a temporary custody order and scheduled a custody trial.

At a pre-trial conference, Mother presented the court with Child's birth certificate, which was in Spanish. It listed Child's and Mother's names; the line for the father's name was blank. Mother also presented an English translation of the birth certificate. The translation listed another man as Child's father. Mother argued the discrepancy was due to an error in the translation. **See** Findings of Fact and Conclusions of Law in Support of Custody Order ("Custody Order"), 11/3/25,[1] at 3. Putative Father did not attend the pretrial conference.

At trial, Mother introduced both Child's birth certificate and the English translation into evidence. She also introduced an "Acceptance of Service," executed by Putative Father, stating he acknowledged service of the complaint

_____

[1] The Custody Order was dated October 31, 2025, but was not filed until November 3, 2025.

and the time of trial and marking a box to confirm that he did not wish to participate.[2]

Mother testified through an interpreter that she works as a childcare provider and can afford to care for Child. **See id.** Mother and Child live with Mother's brother and his spouse. **See** N.T., 10/1/25, at 8. Mother testified that Child is in 10th grade and doing well in school, and that he came to the U.S. because of concern for his safety in Guatemala. She stated Child's younger sister still lives in Guatemala with the children's maternal grandmother, and that Child has three uncles in Guatemala. Mother testified that Putative Father's name is not on Child's birth certificate because he did not "recognize [Child] as a son." **Id.**

Child testified that he understands "[a] little bit" of English and has no recollection of his father. **Id.** at 15-16. He came to the United States due to the economy and crime levels in Guatemala, stating that children can be kidnapped on their way to school. He believes the U.S. will offer him better opportunities. He also stated that his grandmother was able to care for him and protect him when he lived in Guatemala. **Id.** at 17. Putative Father did not attend the trial.

The court issued a Custody Order. The court observed that neither Putative Father nor any other party in the U.S. or Guatemala had contested

_____

[2] Mother also introduced an Office of Refugee Resettlement Verification of Release, confirming Child had been released by the U.S. Department of Health and Human Services to Mother's care.

- 3 -

Mother's exercise of custody over Child. The court also observed that Mother has never sought financial support from Putative Father. It noted there was no evidence such as "photos, police reports, hospital records, social services involvement, [or] text messages" to corroborate Mother's allegations of abuse, abandonment or neglect. Custody Order at 6. The court also questioned Mother's credibility, due to the conflicting birth certificates presented for Child. *Id.* at 3.

The court granted Mother sole legal and primary physical custody of Child. Although Putative Father did not seek custody, the court also awarded him "partial physical custody as the parties may agree upon." *Id.* at 1, 6. The court stated it made the custody award "[a]fter careful consideration of the testimony, and the lack of physical evidence other than the aforementioned concerning birth certificate provided by the Mother; examination of that testimony and witnesses; [and] the factors set forth in 23 Pa.C.S.A § 5328(a) and 231 Pa.Code § 1930.4[.]" *Id.* at 6.

The court denied Mother's request for SIJ determinations. The court stated that to obtain SIJ status, a minor must be declared dependent or placed under the custody of an individual or entity appointed by a state court. *Id.* at 7-8. It also explained that the law prohibits the request for a state dependency order "primarily for purposes of obtaining lawful immigration status." *Id.* at 8 (emphasis removed). The court questioned the credibility of Mother's and Child's testimony, suspecting that Mother's desire to seek formal custody arose solely from her desire to obtain SIJ status for Child. The court relied on

the conflicting birth certificates, the lack of any documentation corroborating an allegation that Putative Father abandoned, neglected, or abused Child in Guatemala, and the potential that Child could reunite with his maternal grandmother and sister if he was returned to Guatemala. The court stated:

> Having observed the testimony and demeanor of both witnesses, the court did not find their testimony to be entirely credible. Rather, the [c]ourt found the testimony to be concerning at times and questionable. The [c]ourt expressed concerns over the birth certificate, first presented to the [c]ourt, which had Mother, [Child], and someone other than [Putative Father], as the father. The authentication of the second birth certificate, which did not name a father at all, was now of concern to this [c[ourt. Moreover[,] Mother genuinely struggled, even with the assistance of an interpreter and then her counsel, to state her home address to this [c]ourt as if she may not reside there or has not resided there until recently. She also struggled to name [Child]'s school, yet she testified that she ensures that he does his homework.

> Given the very minimal testimony and questionable evidence presented to the court, it seems as if [Child] is a well-intentioned teen who traveled to the United States for a better opportunity and life. Yet, both [Child] and [Mother's] testimony seem to be guided by their motivation to demonstrate to the court that [Child] satisfies the requirements necessary to qualify for SIJ[ status].

>                                   . . .

> The court struggled not to believe that [Child's] departure from Guatemala was really for the sole purpose of trying to benefit from the child custody laws in Pennsylvania and for him to become a United States citizen, rather than the stated reasons in the complaint alleging neglect, abuse, and abandonment. . . .

> Furthermore, it appears that Mother never requested an order in custody until she was present in the U.S., the minor child was sixteen (16) years old, Father allegedly resides hundreds of miles away which could dissuade his participation in custody proceedings, and Father allegedly continues to have no contact with [Child]. Additionally, there were no documents presented that indicate that Mother has ever sought an order in support,

while residing in Guatemala, and that Father was capable of providing support. The [c]ourt questioned the credibility of Mother as it pertained to the documentary evidence submitted, and the absence of any other documents that could assist the [c]ourt with a finding of abuse, abandonment, or neglect. Moreover, should [Child] return to Guatemala, [he] would be able to return to maternal grandmother's care.

*Id.* at 4, 5.[3] The court determined the record "does not support" a finding that

Child's reunification with his father is not viable or that his return to Guatemala

is not in his best interest. *Id.* at 1, 6. It stated:

[T]he record in this matter does not support a conclusion that it is in the best interest of [Child] to issue a [SIJ] order due to abandonment, abuse, or neglect. The court cannot conclude, in the absence of unbiased and credible testimony, that reunification is not possible with one or both parents. For instance, [Child] is currently in Mother's care and custody, there is no other parent listed on [Child]'s birth certificate, and Mother alleges [Putative Father] is [Child]'s biological father through there is no corroborating evidence to aid this assertion[,] *i.e.* court orders for support, or prior court orders in custody, or a birth certificate. In addition, should [Child] return to Guatemala, he would also be returning to his younger sibling and would presumably be returning back to the care of his maternal grandmother. Similarly, [Child] has spent more time in Guatemala, than he has in the U.S. Lastly, [Child] testified that he knows little English and is not involved in any activities.

*Id.* 8-9 (italics added).

_____

[3] The court similarly stated,

[I]t appears that Father's alleged abandonment was not in issue for custody, while in Guatemala where [C]hild has spent the majority of his life, as there were no orders in support or custody in Guatemala. Hence, this [c]ourt gathers that Mother seeks an order in custody at this moment, and specific findings of fact, for purposes of immigration.

Custody Order at 2.

Mother appealed, and raises the following issues:

[1.] Whether the custody court erred in considering Appellant Mother's request for SIJ determinations without following the guidelines and standards established by the Supreme Court in **Velasquez v. Miranda**[, 321 A.3d 876, 891 (Pa. 2024)]?

[2.] Whether the custody court erred in finding that the testimony presented at trial, indicating that [Putative] Father abandoned Appellant Mother prior to their child's birth, has never attempted to have any contact with the child, and has never provided any financial support for the child was not sufficient to conclude that the child's reunification with [Putative] Father is not viable due to abandonment and neglect as those terms are defined under Pennsylvania law?

[3.] Whether the custody court erred in finding that the testimony at trial indicating that the child is doing well living with Appellant Mother in Pennsylvania and is afraid of returning to Guatemala due to crime and extreme poverty was not sufficient to support a finding that it is not in the child's best interest to be returned to Guatemala, especially after concluding that it was in the best interest of the child to award sole legal and partial physical custody to Appellant Mother, who lives in Pennsylvania and is providing care and support for the child in Pennsylvania?

Mother's Br. at 4-5 (suggested answers and trial court answers omitted). Father has not filed a brief.

Mother argues that in **Velasquez**, the Pennsylvania Supreme Court held that the role of Pennsylvania courts in the SIJ process is "limited to determining whether there is a factual basis for making the necessary SIJ determinations," and that the court may not "examine a party's motivation for initiating a custody proceeding, even if it is solely for immigration purposes." **Id.** at 17 (citing **Velasquez**, 321 A.3d at 895, 905-06). Mother argues that here, the court erred in refusing to make the requisite SIJ determinations

based on its assessment of Mother's motivation for seeking a custody order. *Id.* at 19-21.

Mother next argues the court erred or abused its discretion in concluding that her evidence does not support a determination that Child's reunification with Putative Father is not viable due to his abandonment and neglect of Child. Mother points out that the court awarded her sole legal and primary physical custody of Child based on her evidence that Putative Father has no role in Child's life. She contends this same evidence sufficiently proved that Putative Father abandoned Child, as defined by 23 Pa.C.S.A. § 5402, and constituted "serious physical neglect" under the definition in 23 Pa.C.S.A. § 6303.[4] *Id.* at 22-24. Mother also argues the court erred in questioning Putative Father's paternity during this analysis, when Putative Father had not raised paternity, and relatedly erred in construing the certified translation of Child's birth certificate (listing another man as Child's father) as conflicting with Child's original birth certificate (listing no father), rather than as a translator's error. Mother also claims the court erred in questioning her credibility based on her failure to instigate custody or support proceedings against Putative Father in

---

[4] Mother also claims the evidence sufficiently proved "child abuse" as defined in 23 Pa.C.S.A. § 6303. Mother does not explain which of the 10 subsections constituting "child abuse" included in the statutory definition applies to Putative Father's alleged conduct. In any event, the question presented in Mother's brief does not raise whether the court should have found the record supported any allegations of child abuse. Therefore, any argument regarding allegations of child abuse has been waived. *See* Pa.R.A.P. 2116(a).

Guatemala, considering that he "signed a declaration that he did not wish to participate in this proceeding." ***Id.*** at 25.

In her final issue, Mother argues the court erred or abused its discretion in failing to find that return to Guatemala is not in Child's best interests after it found that Mother's exercise of primary custody over Child in Pennsylvania is in Child's best interests. Mother asserts that the ***Velasquez*** court found that "a trial court's custody determination awarding custody to an individual in Pennsylvania is in itself a sufficient basis for concluding that it would not be in the best interest of a child to return to his or her country of origin[.]" ***Id.*** at 26. She argues the court here was obligated to make a record finding that return to Guatemala is not in Child's best interest.

When reviewing custody decisions, "our plenary scope of review is of the broadest type[.]" ***Int. of K.N.L.***, 284 A.3d 121, 132-33 (Pa. 2022) (internal quotation marks and citation omitted). While we may not "nullify the fact-finding function of the judge presiding over the custody hearing or their ability to make credibility determinations," ***Velasquez***, 321 A.3d at 891, we must "perform a comprehensive review of the record for assurance the findings and credibility determinations are completely supported." ***Int. of K.N.L.***, 284 A.3d at 133. Furthermore, we are not "bound by the trial court's inferences drawn from its findings of fact[.]" ***Id.*** If the court's conclusions are unreasonable in view of its factual findings, this constitutes an abuse of discretion. ***Velasquez***, 321 A.3d at 891. Where the issues present pure questions of law, our standard of review is *de novo*. ***Id.***

In **_Velasquez_**, our Supreme Court reviewed the federal law governing SIJ classification. **_See id._** at 882-83, 894-95. It explained, in short, that "the SIJ classification allows immigrant children to seek lawful residency in the United States in order to remain where their needs are best met and avoid deportation with, or back to, a parent that maltreated them." **_Id._** at 882-83. To apply for SIJ status before federal authorities, the applicant must have an order issued by what federal law terms a state "juvenile court" – a state court with jurisdiction to make decisions about dependency and/or custody and care of juveniles. **_Id._** at 883. The state-court order must include two predicate judicial determinations: (1) reunification with one or both of child's parents is not viable due to abuse, abandonment, or neglect, or a similar basis under state law; and (2) it is not in the child's best interest to be returned to their or their parent's country of nationality or last habitual residence. **_Id._**

Synthesizing relevant federal law, the Court held:

[A] state court . . . is expressly authorized by federal law to issue the SIJ order when:

(1) The court has exercised its jurisdiction as authorized by Pennsylvania law to determine the dependency and/or custody and care of a child;

(2) Reunification with one or both of the child's parents is not viable due to abuse, abandonment, neglect, or a similar basis under Pennsylvania law; and

(3) It is not in the child's best interest to be returned to the child's or their parent's country of nationality or last habitual residence.

*Id.* at 895 (citing 8 C.F.R. § 204.11(a), (c) & (d)(5)(i); 8 U.S.C. § 1101(a)(27)(J)).

Regarding the first of these three inquiries, the Court explained that a state court was not required to be sitting as a dependency court or appointing a non-parent custodian in order to make SIJ determinations.[5] Rather, it specifically held that a custody court is empowered to make SIJ determinations when awarding custody to a single parent. *Id.* at 897-901.

Regarding the second and third inquiries, the Court stressed that a custody court is limited to making factual findings and drawing judicial conclusions, and not considering "whether immigration to the United States is in [a child's] best interest" or whether SIJ status should be granted by federal authorities. *Id.* at 905. In *Orellana v. Chuva*, 353 A.3d 212, 220 (Pa.Super. 2026), drawing on *Velasquez*, this Court further clarified that "a party's motivation for seeking the predicate factual determinations required for SIJ[ status] is not within the state court's purview," and that "a petitioner's motivation is an inappropriate ground for a custody court to base its [SIJ] findings on." *See also id.* at 218 n.5 (finding the court "to have displayed an inappropriate preoccupation with the children's legal status") (cleaned up).

_____

[5] These interpretations arose from the statutory language defining a special immigrant as an immigrant "who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States[.]" 8 U.S.C. § 1101(a)(27)(J)(i). *See also* 8 C.F.R. § 204.11(c)(1)(i)(B).

Considering the foregoing precedent, we agree that the court here erred in refusing to make SIJ determinations insofar as this refusal was based on Mother's or Child's motivation for seeking a custody order. ***Id.*** at 220. We also agree the court erred insofar as it refused to issue an SIJ order on the basis that Child does not qualify as dependent under Pennsylvania law. ***See Velasquez***, 321 A.3d at 897.[6]

We therefore turn to Mother's second and third issues, and whether the trial court abused its discretion in declining to make the predicate SIJ determinations. The ***Velasquez*** Court explained that when awarding custody, a custody court is already required by statute to decide the child's best interest and, when making that decision, must consider any evidence of parental abandonment, abuse, or neglect. ***Id.*** at 905 (citing 23 Pa.C.S.A. § 5328(a)(2), (a)(2.1), (a)(3), (a)(9)-(10), and (a)(16)). The Court further reasoned that if a custody court decides it is in a child's best interest to award sole custody to

_____

[6] ***See also Castillo v. Guerra***, No. 1579 EDA 2023, 2025 WL 945809, at *2 (Pa.Super. March 26, 2025) (unpublished mem.) (remanding where court refused to issue SIJ order because child had not been committed to the custody of a state agency or individual or entity appointed by a juvenile court); ***Vicente v. Gonzalez***, No. 1322 MDA 2024, 2025 WL 659210, at *1 (Pa.Super. Feb. 28, 2025) (unpublished mem.) (remanding where court denied request to make SIJ determinations on basis that it was not "appointing" the mother as individual custodian); ***Zayas v. Brizuela***, No. 1248 EDA 2024, 2025 WL 47505, at *6 (Pa.Super. Jan. 8, 2025) (unpublished mem.) (finding court erred in refusing SIJ order on basis that it could not make SIJ determinations during custody proceedings and where court was inappropriately preoccupied with the child's legal status); ***Orellana v. Chuva***, No. 1520 EDA 2024, 2024 WL 5103553, at *2 (Pa.Super. Dec. 13, 2024) (unpublished mem.) (remanding where court refused to consider SIJ issues because the children had not been adjudicated dependent).

a person who resides in the United States, it can also determine "that it is in [the child's] best interest not to be returned to her country of nationality[.]" *Id.* The judicial findings supporting such a custody award may also "support the SIJ predicate judicial determination that reunification with the parent located elsewhere is not viable due to that parent's abuse, abandonment, or neglect of the child, or a similar basis under state law." *Id.*

The *Velasquez* Court reviewed the evidence in the case before it and held the custody court had erred in failing to conclude that the facts that supported the award of sole custody to the mother "also supported the SIJ predicate determinations that reunification with [their f]ather is not viable due to abuse, neglect, abandonment, or a similar basis under state law, and that a return to Guatemala is not in [the c]hildren's best interest." *Id.* at 906; *see id.* at 906-908. The Court emphasized that the custody court was tasked only with considering whether the predicate SIJ determinations had been established by a preponderance of the evidence, and that it had erred in denying an SIJ order on the basis that the evidence did not "definitively" establish the SIJ determinations. *Id.* at 906. The Court remanded for the entry of an order containing the requisite SIJ determinations. *Id.* at 908-09.

Here, regarding the second SIJ inquiry, the court found insufficient evidence that Child could not be reunited with Father due to neglect or abandonment. The court based this conclusion on the conflicting birth certificates for Child; Mother's failure to file for custody or support in Guatemala; and the lack of documentation corroborating Child's neglect or

- 13 -

abandonment. The court inferred from these facts that Putative Father had not neglected or abandoned Child, and that the witnesses' testimony on this point was not credible.

This was an abuse of discretion. We are not bound by the inferences drawn by the trial court, by its credibility determinations that are not supported by the record, or by its unreasonable conclusions. *Velasquez*, 321 A.3d at 891; *Int. of K.N.L.*, 284 A.3d at 133. Mother's and Child's testimonies in this case were uncontradicted. Although the court found the witnesses were not credible, its view of their testimony was clearly colored by its improper consideration of their motivation for seeking a custody order. Mother's and Child's testimonies establish, by a preponderance of the evidence, that by failing to have had any presence in Child's life, Putative Father abandoned and/or neglected him, as defined by state law.[7]

_____

[7] *See* 23 Pa.C.S.A. § 5402 (defining "abandoned" as "[l]eft without provision for reasonable and necessary care or supervision"); 23 Pa.C.S.A. § 6303 (defining "[s]erious physical neglect" as, *inter alia*, "[a] repeated, prolonged[,] or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities" or "[t]he failure to provide a child with adequate essentials of life, including food, shelter[,] or medical care" when such failure "endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development[,] or functioning"); *Orellana*, 353 A.3d at 222, 223 n.8 (using these definitions); *see also Monroy v. Chavez*, No. 1033 EDA 2025, 2025 WL 2850744, at *4 (Pa.Super. Oct. 8, 2025) (unpublished mem.) (remanding for entry of SIJ order where the mother presented uncontested evidence that the child "has never resided with [the f]ather, and [the f]ather has never contacted or provided support for the [c]hild," and custody court concluded this constituted abandonment).

In contrast, there is no evidence that reunification with Putative Father, who does not contest Mother's claim for custody, is viable. Even if Putative Father is not Child's biological father, there is no evidence to support that reunification with Child's biological father is viable. The evidence on this point need not be definitive. **See Velasquez**, 321 A.3d at 906.

Finally, we confront the court's refusal to determine, under the third SIJ inquiry, that return to Guatemala is not in Child's best interest. The court based this conclusion on the brief length of Child's residency in the U.S., his limited English language ability and participation in organized activities, the fact that his sister lives in Guatemala, the adequacy of the care he received from his grandmother there, and a presumption that he could return to her care.

In **Orellana**, the custody court questioned the credibility of the mother's testimony that there was no one able to care for her children in Ecuador and that it would therefore be in their best interest to remain with their mother and stepfather in Pennsylvania. **Orellana**, 353 A.3d at 224. While the court awarded joint custody to the mother and stepfather, it refused to find it was not in the children's best interests to return to Ecuador, suspecting they could live with relatives there, and finding that the children had "deeper cultural and familial ties to Ecuador[.]" **Id.**

On appeal, this Court explained that the hypothetical potential for other caretakers in Ecuador did not undermine the mother's uncontroverted testimony establishing that it was not in the children's best interest to be

returned there. We concluded that, because there was no evidence that relatives would be available to care for the children if returned to Ecuador, the court's refusal to determine it was not in their best interests to be returned to Ecuador was an abuse of discretion. *Id.* at 224-25.[8] We therefore remanded for entry of an order "containing predicate SIJS determinations and corresponding factual support[.]" *Id.* at 225.

Here, Child's grandmother has not sought custody of Child. All the evidence supported Mother's claim for custody, and the court accordingly concluded it was in Child's best interest to vest custody in Mother. *See* 23 Pa.C.S.A. § 5328(a) (requiring court to determine custody award based on child's best interest).[9] This conclusion compels the determination that return to Guatemala is not in Child's best interest. The potential that Child may return to his grandmother's care if returned to Guatemala does not undermine the uncontradicted testimony supporting the custody award. *Orellana*, 353 A.3d at 224-25. Moreover, there was no testimony here supporting the court's inference that Child could return to his grandmother's care.

_____

[8] *See also Zayas*, 2025 WL 47505 at *6-*7 (finding it not in child's best interests to be returned to care of neglectful or absent parents in Honduras, given trial court's award of physical and legal custody to Pennsylvania resident, even though trial court had found child's testimony regarding the manner in which she traveled to the U.S. to be not credible, and her testimony regarding her life in Honduras to be only "somewhat credible").

[9] While the Custody Order purported to give partial physical custody to Putative Father, "as the parties may agree upon," Putative Father has not requested custody, declined to participate in the custody proceedings, and resides in another country. Therefore, the Custody Order gives Mother *de facto* sole physical custody of Child, in addition to sole legal custody.

On this record, pursuant to **Orellana**, the refusal to find that it is not in Child's best interest to be returned to Guatemala was an abuse of discretion. We vacate the part of the Custody Order finding the evidence did not support the entry of an SIJ order, and remand for the entry of an order consistent with this memorandum.

Order vacated in part. Case remanded with instructions. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Sullivan notes dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/2/2026